IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | C.R. NO. C-09-137M |
| | § | |
| MARISSA LILIANA CASTELLANOS-CRUZ | § | |
| aka BERENICE TORRES-CANTU | § | |

**ORDER**

Defendant was charged with illegally re-entering the United States in violation of 8 U.S.C. § 1326. A preliminary hearing was conducted on February 12, 2009 and then reconvened until February 19, 2009 to allow the parties to file briefs regarding their legal arguments.

**I. BACKGROUND**

On or about February 6, 2009, defendant was found in the United States, despite having previously been deported on two separate occasions. (D.E. 1). Her most recent deportation was in 2001 for a period of twenty years. Id. She was encountered at the Sarita, Texas Border Patrol checkpoint with her four children who are United States citizens. An immigration inspection was conducted, and she presented a valid employment authorization card. She also had a valid Texas driver's license and a valid social security card. She did not represent that she was in the country legally. She told United States Border Patrol agents that she was leaving her husband and was on her way to Corpus Christi to obtain money from a relative, after which she would continue to Canada.

Defendant had been ordered deported and had been the subject of an expedited removal on September 20, 2001, rendering her ineligible to return to the United States for a period of twenty years. Gov't Ex. 2. Prior to her deportation, she had been convicted of violating 8

1

U.S.C. § 1325.  There is no indication that the order of removal against her has been cancelled or withdrawn, nor is there any indication that she applied for permission to reenter the United States.

As an initial matter, at the February 12, 2009 hearing, the Government moved to amend the criminal complaint to state that the alleged violation occurred on February 16, 2006 in Cameron County as opposed to February 6, 2009 in Kenedy County.  Defendant did not oppose the amendment and it was granted.

At the February 12, 2009 hearing, the Government called Special Agent Rodney Breese of Immigration and Customs Enforcement.  He testified that on or about February 16, 2006, defendant filed a Form I-360 seeking to obtain an employment authorization card by self-petitioning as the spouse of an abuser who is a United States citizen.  Gov't Ex. 1.  On the application pursuant to the Violence Against Women Act ("VAWA"), she indicated that she was residing in Harlingen, Texas.  She indicated on her I-360 application that she had been living at the Harlingen residence since December 2000 through her February 2006 I-360 application.

Defendant's I-360 application has a priority date of February 27, 2006, which means that was the date the application was received.  The application indicates that defendant does not have an I-94, which is a visa permitting her to be lawfully present in the United States.  The application has defendant's alien registration number written on it.  However, she did not disclose her prior removal and criminal history.  The application was initially denied on June 8, 2006, and then subsequently approved that same day.

At the February 19, 2009 hearing, Agent Breese received a temporary A-file from the Border Patrol that was prepared when she was arrested.  The temporary A-file is not complete,

2

but comprises of research conducted through Border Patrol computer systems.  The databases include the Computer Linked Application Information Management System that tracks aliens and the Central Index system.  Agent Breese searched in those two systems regarding defendant and learned that the original I-360 application was received on March 2, 2006 and that a hold was placed on March 6, 2006.  There was an intent to deny on June 8, 2006.  It was appealed and approved also on June 8, 2006.

     Agent Breese testified that a Form I-485 is for changing a status within country.  Defendant's application does not alter her status with the I-360.  There is no record that defendant filed a Form I-485.  Even if she were to file a Form I-485 it is unlikely that her status would be favorably changed based on her previous conviction and the order that she not reenter for twenty years.  Defendant is currently in deferred action status and thus unlikely to be removed.  Agent Breese spoke with a chief counsel at the Department of Homeland Security who indicated that even if defendant were convicted she would probably not be deported.

## II.  DISCUSSION

     Defendant exercised her right to a preliminary hearing pursuant to Rule 5.1 of the Federal Rules of Criminal Procedure.  As a general rule, any arrest is unreasonable unless it is supported by probable cause.  Williams v. Kaufman County, 352 F.3d 994, 1007 (5th Cir. 2003) (citing Michigan v. Summers, 452 U.S. 692, 700 (1981)).  "Probable cause exists when the facts available at the moment of the arrest would warrant a person of reasonable caution in the belief that an offense has been or is being committed and that the individual arrested was the guilty person."  United States v. Raborn, 872 F.2d 589, 593 (5th Cir. 1989) (citing Beck v. Ohio, 379 U.S. 89, 96 (1964)).

There are two issues that have to be resolved to address whether there is probable cause to charge defendant with violating 8 U.S.C. § 1326. The first question is whether permission later granted pursuant to VAWA to remain in the United States eviscerates an existing immigration violation, granting defendant legal status to remain in the United States and depriving the government of probable cause to prosecute her for a violation of 8 U.S.C. § 1326. The second question is whether defendant was found in the United States by immigration authorities as required by 8 U.S.C. § 1326.

**A.      Defendant's Removal Order Has Not Been Cancelled Or Withdrawn.**

Although defendant is subject to a final order of removal, she may seek a cancellation of that order:

> Under the VAWA, aliens who are subject to a final order of removal but who are victims of spousal abuse may file a motion to reopen their immigration proceedings and apply for cancellation of removal if they can demonstrate that they have been 'battered' or that they have been 'the subject of extreme cruelty perpetrated by ... [their] spouses.

Okereke v. Att'y Gen., 262 Fed. Appx. 460, 462 (3rd Cir. 2008) (unpublished) (citing 8 U.S.C. §§ 1154(a)(1)(iii)(A)(I)(bb), 1229b(b)(2)). Such a motion must ordinarily be filed within a year of the issuance of a final order of removal. Id. (citing 8 U.S.C. § 1229a(c)(7)(C)(iv)). However, pursuant to VAWA § 1229a(c)(7)(C)(iv), a Board of Immigration Appeals may "grant an untimely motion to reopen if the alien qualifies under a special rule for battered spouses, children, and parents." Wei v. Mukasey, 545 F.3d 1248, 1251 n.1 (10th Cir. 2008); accord Chen v. Mukasey, 524 F.3d 1028, 1030 n.1 (9th Cir. 2008); see also 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) (the Attorney General may, in his discretion, waive the time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child). A

motion to cancel an order of removal is made before an immigration judge, and appeal of any adverse decision is made before the Board of Immigration Appeals.  See Perales-Cumpean v. Gonzales, 429 F.3d 977, 980-81 (10th Cir. 2005).  In order to grant cancellation of removal, the immigration judge must find that the petitioner has met the statutory requirements, including a continuous physical presence in the United States for at least three years.  Id. at 980 (citation omitted); see also 8 U.S.C. § 1229b(b)(2)(A).

Moreover, the mere fact that defendant has obtained an I-360 visa and might be eligible to apply for cancellation of removal does not automatically grant her relief from a final order of removal.  The Fifth Circuit has determined that although an immigrant was immediately eligible for a visa, and would be eligible to apply for adjustment of status and relief from a removal order upon receipt of the visa, he had nevertheless completed only the first of several steps to obtain relief from a final order of removal, and the right to such relief therefore had not vested.  Silva Rosa v. Gonzales, 490 F.3d 403, 406-08 (5th Cir. 2007).

Similarly, in United States v. Flores, 404 F.3d 320 (5th Cir. 2005), the court addressed an alien charged with being an alien who was illegally in the United States and in possession of a firearm, despite having received temporary protected status.  Id. at 323.  This status did not shield him from prosecution because he had "unlawfully entered the United States without inspection and authorization by an immigration officer."  Id. at 327 (citation omitted).  Indeed, "an alien may be temporarily granted a stay of removal and be permitted to work during that stay, but still be considered 'illegally or unlawfully in the United States.'"  Id. (citation omitted).

Here, defendant has done even less to obtain cancellation of removal.  An I-360 application is not a necessary step to cancel removal; it is an administrative petition which is

handled completely separate from the cancellation process.  See Perales-Cumpean, 429 F.3d at 980 n.1.  There is no indication that defendant has made a motion to cancel the removal order to which she is subject, and, if she has, there is no indication that an immigration judge has approved such cancellation, or that such a motion would even be allowed to proceed, given the time limitation.  Therefore, even if an approved I-360 grants her present legal status, it does not obviate the effect of the removal between September 20, 2001, and June 8, 2006, when her application was approved.

**B.     Defendant Did Not Obtain Permission To Reenter The United States.**

Because there is no indication that defendant's removal order has been cancelled, she is still subject to that order.  Therefore, as an alien who had been deported, she was required to seek the permission of the attorney general to reapply for admission into the United States.  See United States v. Sanchez-Milam, 305 F.3d 310, 312 (5th Cir. 2002) (per curiam).  This requirement applies to both aliens who have been deported because of a felony conviction and aliens who are self-deported.  See id; Aguilar-Garcia v. Ridge, 90 Fed. Appx. 220, 221 (9th Cir. 2004) (per curiam) (unpublished).  This permission must be obtained prior to the alien's attempted reentry into the United States, unless the alien establishes that she was not required to obtain such advance consent.  Sanchez-Milam, 305 F.3d at 312 (citing 8 U.S.C. § 1326).  The permission of the attorney general is sought by filing a form I-212.  Id. at 312-13 (citing 8 U.S.C. § 1182(h)(2); 8 C.F.R. § 212.2).  If the I-212 is approved, the government is required to notify the applicant of such approval.  Id. at 313 (citing 8 C.F.R. § 212.2(h)).

Here, there is no indication that defendant filed an I-212, nor that the I-212 was approved by the Attorney General.  Accordingly, defendant has not established that she had the permission

of the Attorney General to reapply for admission into the United States. Because she is still subject to a final order of removal, such permission was required before she attempted to reenter the United States.

**C.     The Government Provided Evidence That Defendant Was Found In The United States In 2006.**

Defendant argues that the Government failed to establish that she was "found in" the United States on or about February 16, 2006 as alleged in the amended complaint. (D.E. 12, at 3). She relies on United States v. Gunera, 479 F.3d 373 (5th Cir. 2007) to argue that the mere fact she applied for her I-360 visa does not satisfy the "found in" requirement of § 1326.

The Fifth Circuit has held "that a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can be reasonably attributed to the immigration authorities." United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996) (citation omitted); accord Gunera, 479 F.3d at 376. In Gunera, the Fifth Circuit dismissed an indictment and reversed a conviction of a defendant convicted of illegally reentering the United States. Gunera applied for temporary protected status, providing "his true name, date of birth, and place of birth, all of which had been known to the INS at the time of his 1991 deportation." 479 F.3d at 375. However, he failed to "disclose that he had been previously convicted of a crime and deported, or that he had been issued an alien registration number." Id. Holding that the indictment was barred by the five-year statute of limitations, the Fifth Circuit concluded that the Government was on notice of the defendant's illegal presence in the United States:

> [W]e believe the immigration authorities can reasonably be

> attributed with actual knowledge that Gunera was present illegally
> in the U.S. on September 28, 1999, when the NAILS system
> identified him as having a prior deportation based on a prior
> conviction for an aggravated felony, that inquiry having been run
> on the same name, same date of birth, and same country of origin
> as Gunera submitted on his TPS application.  Gunera's TPS
> application also provided a U.S. address at which Gunera could be
> physically located.

Id. at 376.  It based the notice on information that defendant in this action also provided to the Government.

The Government presented evidence that immigration authorities originally intended to deny her I-360 application on June 8, 2006.  The Assistant United States Attorney argues that the discovery of defendant's alien registration number would have provided them with information that she was removed, Gov't Ex. 1, resulting in the intention to deny the application.  That intention is an "indicator that the Government had actual knowledge of the illegality of [defendant's] presence" in 2006.  Gunera, 479 F.3d at 377.  The Fifth Circuit has further explained that "'the knowledge of the illegality of [a defendant's] presence, through the exercise of diligence typical of law enforcement authorities, can be reasonably attributed to the immigration authorities.'"  United States v. Serna-Villarreal, 352 F.3d 225, 233 (5th Cir. 2003) (quoting Santana-Castellano, 74 F.3d at 598).  The I-360 triggered some diligence by immigration officials, as evidenced either by the finding of defendant's alien registration number, or the likelihood they would have conducted a database search of the number if it was provided by defendant, as well as the initial intent to deny her application.

### III.  CONCLUSION

Defendant was subject to a previous removal order; there is no indication that she has successfully sought to have that order cancelled.  Accordingly, she was required to seek the

permission of the attorney general to reapply for admission into the United States through an I-212 application.  There is no indication that she filed such an application.  Finally, the Government has provided some evidence that it became aware of her illegal reentry in 2006.  Accordingly, the government has probable cause to prosecute her for a violation of 8 U.S.C. § 1326.

     ORDERED this 24th day of February 2009.

                                                  _____
                                                  BRIAN  L. OWSLEY
                                                  UNITED STATES MAGISTRATE JUDGE